**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ SEP 16 2014 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
JOHN ANTHONY DELUTRO,

              Petitioner,

  - against -

UNITED STATES OF AMERICA,

              Respondent.
-------------------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
11-CV-2755 (CBA)

AMON, Chief United States District Judge.

Petitioner John Delutro ("Delutro"), proceeding pro se, filed this motion for a writ of habeas corpus pursuant to 28 U.S.C. § 2255, seeking to vacate, set aside or correct his sentence. Delutro pleaded guilty to conspiracy to commit robbery in violation of the Hobbs Act, 18 U.S.C. § 1951, and was sentenced to a 240 month term of imprisonment. Delutro claims that habeas relief is warranted on several grounds, none of which are meritorious. For the reasons stated below, this Court denies his petition.

## BACKGROUND

### I.    Plea Agreement and Sentencing

On December 2, 2009, the Government filed a third superseding indictment charging Delutro with three counts: conspiracy to commit robbery, attempted robbery, and possession and use of a firearm in furtherance of the charged robbery. On February 9, 2010, Delutro entered into a plea agreement with the Government and pled guilty to Count One of that indictment, conspiracy to commit robbery. The conspiracy count carried a 20-year maximum sentence. The plea estimated that Delutro had a sentencing guideline offense level of 43 and a Criminal History Category I, resulting in a sentencing range of life in prison. Delutro's sentence was limited by the

maximum sentence that could be imposed on the single count to which he pled.[1]  Delutro

stipulated that the guideline calculation was correct, that the statutory maximum of 240 months

imprisonment was the appropriate sentence, and agreed not to advocate for a sentence below the

statutory maximum of 240 months.  Delutro further agreed to waive his right to appeal or

otherwise challenge his sentence, including pursuant to 28 U.S.C. § 2255, if the Court imposed a

sentence of 240 months or less.

Delutro entered his guilty plea before this Court on February 9, 2010.  At his plea

hearing, the Court informed Delutro:

> [I]f instead of going to trial, you plead guilty to the crime charged . . . you will be
> giving up your right to a trial and all the other rights I've discussed.  There will be
> no trial in this case and no right to any appeal on the question of whether you did
> or did not commit the crime. . . . Do you understand?  (Plea Tr. at 9.)

Delutro answered, "Yes, Your Honor." (Id.)

Turning to the plea agreement, the Court asked Delutro if he read the agreement and

Delutro indicated that he had.  The Court then specifically inquired about Delutro's waiver of his

right to file an appeal or challenge his sentence through a § 2255 petition:

> THE COURT:  At Paragraph 4 of your agreement, it says, "The defendant agrees
> not to file an appeal or otherwise challenge by petition pursuant to 28 U.S.C.
> Section 2255 . . . the conviction, or sentence in the event that the Court imposes a
> term of imprisonment of 240 months or below."
> Now, what I understand that to mean is that if I give you what is, in essence, the
> maximum sentence here 20 years, that you have agreed not to challenge that
> sentence; and that means even if you think I made some mistake in imposing.
> Even if you think I was wrong about how I calculated the guidelines, you are still
> giving up your right to appeal the sentence by virtue of the plea agreement.
> Do you understand that?
> THE DEFENDANT: Yes, Your Honor.
> THE COURT: You're also giving up your right not only not to appeal the
> sentence, but you're also giving up your right to come back at some future time . .
> . and make any kind of habeas corpus motion seeking to vacate your conviction or
> sentence. . . Do you understand that?

---

[1] As part of the plea agreement, the Government agreed to dismiss Count Three of the indictment which carried a
10-year mandatory consecutive sentence.

> THE DEFENDANT: Yes, Your Honor.
> THE COURT: Did anyone threaten or force you to give up these additional rights?
> THE DEFENDANT: No, Your Honor. (Id. at 11-12.)

The Court next inquired about Delutro's agreement not to seek a sentence below 240 months.

> THE COURT: All right. I want to make sure you understand this . . . Mr. Delutro. You are in agreement that . . . the appropriate sentence that the Court should sentence on Count One is the maximum, 20 years.
> Do you understand that you're agreeing to that, you're not going to challenge that that should be your sentence?
> THE DEFENDANT: Yes, Your Honor. (Id. at 17.)
> . . .
> THE COURT: Let me explain something to you.
> Technically, I am not bound by the agreement with the Government. On your plea to the one count, if I agree, after looking through all of the papers at the sentencing, if I accept the plea agreement that you've reached, then, as a practical matter, I couldn't give you more than 240 months.
> Do you understand that?
> THE DEFENDANT: Yes, Your Honor. (Id. at 22-23.)

The Court sought to ensure that Delutro was adequately represented by counsel during the plea process.

> THE COURT: Mr. Delutro, have you had enough time to discuss with your attorney this decision to enter a guilty plea in this case?
> THE DEFENDANT: Yes, Your Honor.
> THE COURT: Are you satisfied to have him represent you?
> THE DEFENDANT: Yes, Your Honor. (Id. at 5-6.)

Finally, the Court verified that Delutro's guilty plea was not coerced.

> THE COURT: Are you pleading guilty voluntarily and of your own free will?
> THE DEFENDANT: Yes, Your Honor.
> THE COURT: Has anyone threatened, forced, or pressured you to plead guilty?
> THE DEFENDANT: No, Your Honor. (Id. at 22.)

Explaining his role in the conspiracy, Delutro stated that he conspired to rob an individual he knew to be carrying a large amount of jewelry and admitted that he was at the location of the robbery on the day of the robbery. (Id. at 24-26.) The Court accepted Delutro's guilty plea. (Id. at 27.)

At his sentencing hearing, Delutro again affirmed that he was satisfied with his counsel's representation, (Sentencing Tr. at 3) and that he waived his right to appeal (id. at 16). He indicated that he "tried to take responsibility as soon as possible," and that "the minute my attorney asked me to enter into a plea agreement with the Government . . . that's exactly what I did." (Id. at 14.) The Court sentenced Delutro to 240 months in prison. (Id. at 16.)

## II.    Petitions and Affidavits

### A. Petitions

Delutro filed an initial timely petition and several subsequent untimely petitions asserting claims that he argues relate back to his initial petition. Delutro's initial § 2255 contended that he was denied effective assistance of counsel in violation of the sixth amendment because his attorney Arnold N. Kriss ("Kriss"): (1) threatened to withdraw from the case unless he pleaded guilty, (2) enlisted Delutro's father and uncle to force him into pleading guilty, and (3) predicted that he would receive a sentence of life in prison if he proceeded to trial. (Pet. Mem. at 4-5.) Delutro requested that this Court hold an evidentiary hearing on his claim that he received ineffective assistance, or in the alternative, vacate his sentence, permit him to withdraw his guilty plea, and allow his case to proceed to trial. (Id. at 10.)

On August 30, 2011, the Government filed a response in opposition to Delutro's habeas petition containing an affidavit from Kriss. Following the Government's response, Delutro sought discovery and additional time to file his reply. This Court denied Delutro's discovery request and granted him additional time to file his reply. Delutro filed his reply on February 22, 2012. This reply, for the first time, claimed that Kriss incorrectly advised Delutro and Delutro's

father that Delutro was charged with Count Four of the Third Superseding Indictment, a murder count.[2]

In subsequent filings, Delutro sought to amend his initial petition to add (1) citations to relevant case law; (2) a claim that his attorney incorrectly informed him that he was charged with a murder count, as referenced in his reply brief; (3) a claim of ineffective assistance of counsel on the basis that Kriss failed to properly explain how the offense level was calculated under the sentencing guidelines, and (4) a claim that there was an insufficient factual basis to support his guilty plea. This Court ordered additional briefing on these proposed amendments and the Government and Delutro were each provided an opportunity to file briefs in response to that order.[3]

### B. Affidavits

In support of his motions, Delutro submitted two of his own affidavits and a third affidavit of his father, Peter Delutro ("Peter"). In his first affidavit, Delutro averred that he repeatedly told Kriss that he did not want to enter a guilty plea because he was innocent, but that Kriss nevertheless continuously pressured him to enter a guilty plea. Delutro stated that Kriss represented that a guilty plea would result in a sentence below 20 years. (Delutro Aff. ¶¶ 2-5.) As a result of this disagreement, Delutro claimed that the attorney client relationship broke down and that he refused to meet with Kriss. (Id. ¶ 7.) According to Delutro, Kriss then enlisted the support of Delutro's father and uncle to convince Delutro to plead guilty. (Id. ¶ 8.) Delutro swore that he only pled guilty because of the pressure he was receiving from his father and uncle, because Kriss threatened to withdraw from the case, and because he feared that as a result of

---

[2] Curiously, this new claim was only raised after the Government filed Kriss's affidavit which mistakenly stated that Delutro was charged with Count Four.

[3] After granting his request for an extension, Delutro's brief was due on September 8, 2014. To date, this Court has not received that brief.

Kriss's withdrawal he would have to proceed to trial unrepresented and could possibly receive a life sentence. (Id. ¶¶ 8, 9.)

The second affidavit repeated many of the assertions contained in the first affidavit. He added that he chose not to participate in the robbery and "took necessary steps to renounce my participation in the robbery of the jeweler." (Delutro Aff. II ¶¶ 3, 4, 12.) Delutro further claimed that his co-defendants testified that he withdrew from the conspiracy.[4] (Id. ¶¶ 9, 10). Finally, according to Delutro, Kriss incorrectly informed him that he was named in Count 4 of the Third Superseding Indictment, a murder court. (Id. ¶¶ 10, 11.)

In his affidavit, Delutro's father stated that he was unaware of the circumstances that led the breakdown of the attorney client relationship between his son and Kriss, and that his son only informed him of the breakdown one year after he pled guilty. (Peter Aff. ¶ 3.) Peter explained that because he was unaware of the attorney-client relationship break down, he agreed to "talk sense" into his son who was refusing to visit with Kriss. (Id. ¶¶ 4, 5.) According to Peter, at a meeting between Kriss, Peter, Delutro, and Delutro's uncle, Kriss explained that the government had clear evidence of Delutro's guilt and that if Delutro did not plead guilty Kriss would withdraw from the case forcing Delutro to proceed to trial unrepresented. After four to six hours of "tag team style" conversation, Delutro agreed to plead guilty even though he insisted that he was innocent. (Id. ¶¶ 7, 8.) Expressing remorse and guilt, Peter opined that he believes his son only pled guilty because of the pressure exerted on him during the meeting. Peter claimed that had Kriss not manipulated him into believing there was substantial evidence of his son's guilt and not threatened to withdraw, he never would have convinced his son to plead guilty. (Id. ¶ 9.)

The Government opposed Delutro's petitions and Kriss submitted two affidavits in support of the Government's opposition. In his first affidavit Kriss stated that he represented

---

[4] The record of their testimony does not make out a withdrawal from the conspiracy.

Delutro, who was charged with conspiracy to commit robbery, attempted robbery, using and carrying a firearm, and causing death through the use of a firearm. (Kriss Aff. ¶ 3.)[5] Kriss stated that Delutro knowingly, voluntarily and intelligently entered a guilty plea and accepted responsibility for his actions. (Id. ¶ 11.) Kriss denied ever threatening to withdraw as counsel. (Id. ¶¶ 12, 39.) He explained that he and Delutro discussed proceeding to trial, but that Delutro agreed going to trial was too risky because he could not present a convincing defense. (Id. ¶¶ 16-18.) Consequently, Kriss attempted to negotiate a plea agreement with the Government. (Id. ¶ 20.) The Government insisted on a twenty to thirty year sentence, despite Kriss's attempts to secure a lower plea offer, and provided a limited time frame to accept the plea.[6] (Id. ¶¶ 21-23.)

Kriss then contacted Delutro's father and uncle and the four of them discussed Delutro's options for several hours. Following that meeting, Kriss noted that Delutro was upset about the twenty year sentence and believed that it would be best to give him more time to think about how he wanted to proceed. (Id. ¶ 27.) Kriss spoke with Delutro a few days later who, although still upset about the twenty years, agreed to plead guilty. (Id. at ¶ 29.) Concerned about ensuring that the plea was in fact voluntary, Kriss again visited Delutro and insisted that he should only plead guilty if he wanted to, and that Kriss would not partake in any guilty plea that was not voluntary. (Id. ¶ 35.)

Although Delutro was still not pleased about the twenty year term of imprisonment, he stated he would be willing to plead guilty and accept responsibility. (Id. ¶ 36.) Kriss explained that he only recommended that Delutro plead guilty after reviewing the discovery material,

---

[5] Kriss's affidavit mistakenly states that Delutro was charged with Causing Death Through Use of a Firearm, which was Count 4 of the superseding indictment. (Kriss Aff. ¶ 3; 08-cr-559, DE # 122, Superseding Indictment; 11-cv-2755, DE # 22, Mem in Opp., Ex. C, Kriss Suppl. Aff.) Although the criminal complaint alleged that Delutro caused the death of an individual with the use of a firearm, he was not named in Count 4.

[6] Count Three, in which he was named but not required to plead to under the plea agreement, carried a 10-year mandatory consecutive sentence.

speaking to co-defendants' counsel, and reporting his findings to Delutro. (Id. ¶¶ 38, 40.) In his second affidavit, Kriss acknowledged that his initial affidavit mistakenly noted that Delutro had been charged with a murder count, but stressed that he repeatedly informed Delutro, as well as Peter Delutro, that the Government intended to file a superseding indictment charging Delutro with a murder count. (DE # 22, Mem in Opp., Ex. C, Kriss Suppl. Aff., ¶¶ 3 n.1, 9-12.) At a January 26, 2010 meeting with the Government, Kriss learned that the Government would agree not to file a superseding indictment against Delutro if he pleaded guilty. (Id. ¶ 17.) Kriss conveyed this information to Delutro as well as to Delutro's father. (Id. ¶ 18.)

## DISCUSSION

Delutro filed an initial § 2255 petition and then sought to add additional claims. The Government argues that the claims raised in Delutro's initial petition are procedurally barred both because they were not raised on direct appeal and because of an appeal waiver in his plea agreement. They argue further that the claims raised in his subsequent petitions are time-barred because they do not relate back to his first timely petition. Finally, the Government argues that were Delutro to survive these procedural hurdles, none of his claims have merit. This Court concludes that there is no procedural bar to the claims raised in Delutro's initial petition,[7] that the claims raised in his amended petitions are untimely, that all of his claims lack merit, and that although there are factual disputes between Delutro and his counsel, no hearing is necessary since the record and Delutro's own statements refute his claim of a coerced plea.

---

[7] A defendant may bring an ineffective assistance of counsel claim despite waiving his right to an appeal where "the claim concerns the advice [the defendant] received from counsel," Parisi v. United States, 529 F.3d 134, 138-39 (2d Cir. 2008) (internal quotation marks omitted), and a defendant may appropriately raise an ineffective assistance of counsel claim for the first time in a § 2255 petition, Harrington v. United States, 689 F.3d 124, 129 (2d Cir. 2012).

## I.    Relation Back

Delutro concedes that his motions to amend were filed "well after AEDPA's statute of limitations period ha[d] run." (DE # 16, Second Motion to Amend, at 8.)  However, he claims that his various proposed amendments relate back to his original timely filed § 2255 petition.  To be timely, a claim raised for the first time after the limitations period has expired must "relate back" to an initial timely petition.  Martin v. United States, 834 F. Supp. 2d 115, 123 (E.D.N.Y. 2011) (citing Slayton v. Am. Express Co., 460 F.3d 215, 228 (2d Cir. 2006)).  An amendment relates back if it "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out . . . in the original pleading." Fed. R. Civ. P. 15(c)(1); Fama v. Comm'r of Corr. Sevs., 235 F.3d 804, 815-16 (2d Cir. 2000) ("Subsection (c) of Rule 15 governs motions to amend where (as here, given the AEDPA) the statute of limitations for the underlying cause of action has already run.").  In the habeas context, a claim that depends "upon events separate in 'both time and type' from the originally raised episodes" does not relate back to the original petition. Mayle v. Felix, 545 U.S. 644, 657 (2005).  The fact that initial petition and the proposed amended claim relate to the same stage of the proceeding is insufficient to establish relation back. Gibson v. Artus, 407 F. App'x 517, 519 (2d Cir. 2010) (citing Felix, 545 U.S. at 656-57).

### A.  Citation to Cases

Delutro's amended petitions seek to add citations to Lafler v. Cooper, 132 S. Ct. 1376 (2012), Missourie v. Frye, 132 S. Ct. 1399 (2012), and Titlow v. Burt, 680 F.3d 577 (6th Cir. 2012).[8]  The Government concedes that these cases can properly be considered by this Court to the extent the cases Delutro cites in his amended petition relate to his earlier filed claims.  However, these cases do not provide Delutro with any new basis for habeas relief.

---

[8] The Supreme Court reversed the Sixth Circuit in Burt v. Titlow, 134 S. Ct. 10 (2013).

## B. Kriss's Misrepresentation that Delutro was Charged with a Murder Count

Delutro's claim regarding the murder count, raised for the first time in his reply, must relate back to the initial petition in order to be considered timely. See Hiraldo v. United States, No. 05-CV-760, 2006 WL 1794775, at *3-4 (E.D.N.Y. June 7, 2006). The initial petition, although contending that Kriss employed various measures to pressure Delutro into pleading guilty, did not allege that Kriss misrepresented the substance of the indictment. The fact that Delutro's new claim and old claim both arise during the same stage of the proceeding does not justify finding relation back because the new claim arises from a wholly new set of facts, specifically that Kriss misrepresented the counts Delutro was charged with. See Mayle, 545 U.S. at 657; Gibson, 407 F. App'x at 519.

Although Delutro does not explicitly invoke 28 U.S.C. § 2255(f)(4), he does claim that he only discovered his new claim after reviewing documents and seeking the assistance of others. 28 U.S.C. § 2255(f)(4) provides that the AEDPA one year limitations period runs from "the date on which the facts supporting the claim . . . could have been discovered through the exercise of due diligence." To have uncovered Kriss's alleged misrepresentations about the indictment Delutro need only have read the indictment which he had access to. Moreover, he was present when Kriss more than once informed this Court that the Third Superseding Indictment did not charge Delutro with a murder count. (DE # 22, Mem in Opp., Ex. A, 12/7/09 Tr. at 5-6; Ex. B, 12/18/09 Tr. at 4.) Accordingly, 28 U.S.C. § 2255(f)(4) does not render this new claim timely.

## C. Miscalculation of the Guideline Range

Delutro asserts a claim of ineffective assistance due to Kriss's miscalculation of the relevant sentencing guideline range. This claim arises out of a different conduct, transaction, or occurrence than the claims set forth Delutro's original pleading. The earlier claims make no

mention of the sentencing guidelines and the facts supporting Delutro's new claim are wholly distinct from the facts that support his earlier claims. See Mayle, 545 U.S. at 664 n.7 (approving of relation back where a new claim relies on the same facts and only changes the legal theory).[9]

### D. Insufficient Factual Basis for Accepting Delutro's Plea

Delutro apparently further claims that this Court accepted his guilty plea despite having an insufficient factual basis for accepting the plea. Because such a claim is wholly unrelated to Delutro's timely ineffective assistance of counsel claims it also does not relate back. See Mayle, 545 U.S. at 650 ("An amended habeas petition, we hold, does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth."). In addition to being untimely, this claim is procedurally barred for two additional reasons. First, Delutro could have raised this claim on appeal, but did not.[10] Zhang v. United States, 506 F.3d 162, 166 (2d Cir. 2007) (finding that petitioner procedurally defaulted by failing to bring a direct appeal because "[a] motion under § 2255 is not a substitute for an appeal") (quotation marks omitted); Viera v. United States, 832 F. Supp. 2d 222, 226-27 (E.D.N.Y. 2011) ("[Petitioner's] claims are also barred because he did not file a direct appeal."). Second, because this Court determines below that Delutro's guilty plea was made knowingly and voluntarily, the appeal waiver in Delutro's plea agreement also bars him from advancing this argument. Garcia-Santos v. United States, 273 F.3d 506, 508 (2d Cir. 2001) (holding that a defendant who knowingly and voluntarily waived his right to collaterally attack his sentence may not subsequently file a § 2255 motion attacking that sentence).

---

[9] The Government construes this claim as alleging that the Court erred in its guideline calculation. Because this Court is under an obligation to liberally construe a pro se petitioner's filings, it concludes that Delutro is advancing an additional ineffective assistance of counsel argument. For the reasons described below, Delutro fares no better if this Court adopted the Government's interpretation.

[10] Delutro has not shown cause and prejudice that would excuse his procedural default.

## II. Merits

Although this Court finds that Delutro's only timely claims are the ones asserted in his initial petition, this Court nonetheless reviews all of his claims on the merits.

### A. Ineffective Assistance of Counsel

"[I]n order to prevail on an ineffective-assistance-of-counsel claim, a defendant must show (1) that his attorney's performance fell below an objective standard of reasonableness, and (2) that as a result he suffered prejudice." United States v. Jones, 482 F.3d 60, 76 (2d Cir. 2006). In evaluating the first prong, "[j]udicial scrutiny of counsel's performance must be highly deferential" and a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight." Strickland v. Washington, 466 U.S. 668, 689 (1984). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and the "defendant must overcome the presumption that, under the circumstances, the challenged action" was reasonable. Id. In order to satisfy the second prong, "with respect to a claim focusing on a plea of guilty, 'the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" Gonzalez v. United States, 722 F.3d 118, 130 (2d Cir. 2013) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). Where the defendant's claim of ineffective assistance relates to sentencing, "the defendant must show a reasonable probability that, but for counsel's substandard performance, he would have received a less severe sentence." Id. (citing Lafler, 132 S.Ct. at 1387).

Here, Delutro's claim is that his counsel's ineffective assistance rendered his plea involuntary and unintelligent. "The standard for determining the validity of a guilty plea is

'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" Urena v. People of the State of New York, 160 F. Supp. 2d. 606, 610 (S.D.N.Y. 2001) (quoting Ventura v. Meachum, 957 F.2d 1048, 1058 (2d Cir. 1992)). If the defendant received the "advice of counsel, understood the consequences of his plea and the plea was not physically or mentally coerced" then the plea is intelligent and voluntary. Brown v. United States, 637 F. Supp. 2d 212, 218 (S.D.N.Y. 2009) (internal quotation marks omitted); Fuller v. Schultz, 572 F. Supp. 2d 425, 440 (S.D.N.Y. 2008); Gomez v. Duncan, No. 02-Civ.-0846, 2004 WL 119360, *18 (S.D.N.Y. Jan. 27, 2004) ("A plea is involuntary where the defendant did not have knowledge of the nature of the constitutional protections he will forgo by entering his plea." (internal quotation marks omitted)).

### 1. Coerced into Pleading Guilty

#### i. Threat to Withdraw and Enlisting of Family Members

Delutro alleges that Kriss coerced him into pleading guilty by (1) threatening to withdraw if Delutro did not plead guilty and (2) enlisting Delutro's father and uncle to convince him to plead guilty.

Delutro fails to establish that his guilty plea was coerced by his attorney. At his plea and sentencing hearing, Delutro stated that he was pleading guilty voluntarily and that no one threatened, coerced, or pressured him into pleading guilty. He further stated that he was satisfied with his counsel's performance. Whether or not Kriss threatened to withdraw, or his father and uncle, at Kriss's request, convinced him to plead guilty, Delutro is not entitled to habeas relief. First of all, although the court does not find credible the claim that Kriss threatened to withdraw, even if he did, Delutro has not made out coercion. An attorney does not necessarily act coercively when informing a client that he will withdraw from a case if the client chooses to

proceed to trial. See <u>Perilli v. United States</u>, No. 04-CV-4430, 2005 WL 1162914, at *3 (E.D.N.Y. May 17, 2005) (finding frivolous petitioner's claim that he was coerced into pleading guilty by his attorney's threat to withdraw if he proceeded to trial where the attorney believed that pleading guilty was the best course of action and that belief led to stress on the attorney-client relationship).

More importantly, at his plea hearing Delutro explicitly denied that his attorney's conduct coerced him into pleading guilty. These in-court statements are afforded a "strong presumption of verity," <u>see</u> <u>Gonzalez</u>, 722 F.3d at 130-31, and create a "formidable barrier" to habeas relief, <u>see</u> <u>Blackledge v. Allison</u>, 431 U.S. 63, 74 (1977). Delutro's claims of coercion fail because even if this Court accepted Delutro's allegations regarding Kriss's conduct as true, his in-court statements conclusively indicate that the alleged conduct did not result in a coerced plea. <u>United States v. Doe</u>, 537 F.3d 204, 213 (2d Cir. 2008) ("[S]tatements at a plea allocution carry a strong presumption of veracity."); <u>see also</u> <u>Adames v. United States</u>, 171 F.3d 728, 732 (2d Cir. 1999) (holding that a "criminal defendant's self-inculpatory statements made under oath at his plea allocution . . . are generally treated as conclusive in the face of the defendant's later attempt to contradict them").

To the extent Delutro argues that Kriss provided ineffective assistance by enlisting Delutro's father and uncle to convince him to plead guilty or by misrepresenting the evidence against him, these claims fail as well. Even if the Court accepted that Delutro's father and uncle convinced Delutro to plead guilty, Delutro is not thereby entitled to habeas relief. Kriss's decision to enlist Delutro's father and uncle to discuss Delutro's options was not unreasonable. <u>Purdy v. United States</u>, 208 F.3d 41, 45 (2d Cir. 2000) ("Counsel's conclusion as to how best to advise a client in order to avoid, on the one hand, failing to give advice and, on the other,

14

coercing a plea enjoys a wide range of reasonableness because representation is an art, and [t]here are countless ways to provide effective assistance in any given case." (citations and internal quotation marks omitted) (alterations in original)).

Peter's claim that he was manipulated into believing that the Government had convincing evidence of his son's guilt, when in fact, the only evidence against his son was the post-arrest statement of a co-conspirator (Peter Aff. ¶ 8) does not render ineffective Kriss's decision to enlist Delutro's family. Although Peter may disagree with Kriss's assessment that the evidence against his son was convincing, Kriss's representation to Peter was not unreasonable. A co-conspirator was willing to testify about Delutro's extensive involvement in the conspiracy (Kriss Aff. ¶ 17; Maniscalco Tr. at 500-05, 510-15), the government had incriminating cell phone records (Kriss Aff. ¶ 17), and Delutro lacked a strong alibi (Kriss Aff. ¶¶ 17, 18). Under these circumstances a reasonable lawyer might have concluded that there was convincing evidence against Delutro. See Strickland, 466 U.S. at 689-90.

Accordingly, this Court denies relief based on Delutro's claim that his attorney threatened to withdraw and caused his father and uncle to coerce him into pleading guilty.

ii. Count Four of the Superseding Indictment

Delutro claims that Kriss provided ineffective assistance by incorrectly stating that he was charged with Count 4 of Third Superseding Indictment, a murder count. In support of this claim, Delutro relies on a self-serving affidavit and a misstatement in Kriss's initial affidavit. This Court does not find Delutro's claim credible.

The record, as well as both Kriss and Peter's affidavits contradict Delutro's claim that Kriss misinformed him regarding the murder count. This Court notes that Kriss's first affidavit only incorrectly listed the counts Delutro was charged with; it did not state that Kriss ever

15

informed Delutro that Delutro was charged with a murder count. Both Kriss's initial and supplemental affidavits stated that he informed Delutro that the government intended to add a murder charge in a future superseding indictment, not that he was presently charged with that count. Likewise, Peter's affidavit claimed that Kriss stated that the government would, in the future, indict Delutro with Count Four if he did not plead guilty. In his second affidavit, Kriss clarified that his initial affidavit simply erred in listing the murder count as a count with which Delutro was charged.

The record also supports Kriss's account. At Delutro's arraignment, Kriss indicated that he reviewed the Third Superseding Indictment with Delutro, that Delutro was charged with three counts under that indictment, and that he had not yet been charged with a murder count. (DE # 22, Mem. in Opp., Ex. A, 12/7/2009 Tr. at 2, 5.) At a status conference held eleven days later, Kriss again informed the Court, in Delutro's presence, that Delutro was not charged with a murder count under the Third Superseding Indictment. (DE # 22, Mem. in Opp., Ex. B, 12/18/2009 Tr. at 4). At Delutro's plea hearing, Kriss informed this Court, in Delutro's presence, that Delutro was pleading guilty to the Third Superseding Indictment, and that as a condition of that plea the Government would dismiss the two other counts against him in that indictment and would not bring any future charges relating to the robbery and subsequent death of the victim. (Plea Tr. at 3, 19.) The record thus supports Kriss's claim that he never informed Delutro that he was charged with a murder count, and only told him that the Government was seeking to add a murder count if he did not plead guilty.

Because Delutro relies only on a self-serving affidavit contradicted by the record and multiple affidavits, this Court denies his claim.[11]

---

[11] Delutro's affidavit further lacks credibility because it raises a claim that Delutro could have but did not raise in his initial affidavit. Delutro's initial affidavit indicated that he pleaded guilty to Count One, that Counts Two and Three

### iii. Life in Prison

Delutro claims that Kriss provided ineffective assistance when he speculated that Delutro could face possible life in prison if he proceeded to trial. The same evidence that supports concluding that Kriss did not misrepresent the counts Delutro was charged with also supports concluding that Kriss did not provide ineffective assistance in advising Delutro that he could face life in prison if he proceeded to trial.

Under the first prong of the Strickland test, Delutro must demonstrate that his counsel's assistance "fell below the objective standard of reasonableness" based on "prevailing professional norms." Strickland, 466 U.S. at 688. Kriss's advice to plead guilty and avoid a possible sentence of life at trial was not unreasonable. The criminal complaint against Delutro alleged that he caused the death of an individual with the use of a firearm (08-cr-559, DE #1) and Count 4 of the Third Superseding Indictment alleged that the named defendant acted with others. The Government informed Kriss that they were seeking to file a fourth superseding indictment. (Kriss Aff. ¶ 27.) The Government also represented to this Court that they sought to add a murder count against Delutro. (DE # 22, Mem. in Opp., Ex. A, 12/7/2009 Tr. at 11-12.) This Court concludes that Kriss did not provide ineffective assistance when he advised Delutro that a benefit of pleading guilty would be avoiding the possibility of facing a murder count that carried a potential life sentence.

### 2. *Misinformed about Sentencing Guideline Range*

In a proposed amendment to his initial § 2255 petition, Delutro contends that Kriss provided ineffective counsel when he advised Delutro to accept a plea that included a base

---

were dismissed pursuant to the plea, and that he was not named in Count Four of the Superseding Indictment. It does not claim any misrepresentation as to the charges Delutro was charged with. Only after Kriss submitted his initial affidavit containing the misstatement did Delutro raise the claim he now advances.

17

offense level of 43, and that because of that ineffective assistance Delutro stipulated to a 20 year prison term and waived his right to argue for a lower term of imprisonment. Delutro argues that his base offense level should have been 20, that his Criminal History was Category I, and that taken together his proper sentencing range should have been 33 to 41 months.

Delutro's claim is meritless. He provides no basis for his assertion that the proper guideline range was 33 to 41 months. It is possible that he relies on United States Sentencing Guidelines ("USSG") § 2B3.1(a), which establishes a base level of 20 for robbery in violation of 18 U.S.C. § 1951(a). However, USSG § 2B3.1(c)(1) provides that where "a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111 had such killing taken place within the territorial or maritime jurisdiction of the United States" the base offense level for a violation of 18 U.S.C. § 1951 is 43. Count Four of the Superseding Indictment alleged that a co-conspirator caused the death of person through the use of a firearm, and at his sentencing hearing Delutro admitted that someone was killed during the commission of the robbery. (Sent. Tr. at 14-15.) Applying USSG § 2B3.1(c)(1), the proper base calculation was 43.

This Court further notes that this claim may have been waived by Delutro's plea agreement in which he agreed not to file a § 2255 petition challenging his sentence. It is well settled that although plea agreements are generally enforceable, they may be challenged by showing that the agreement was entered into involuntarily and unknowingly or based on ineffective assistance of counsel. United States v. Marte, 798 F. Supp. 2d 511, 515 (S.D.N.Y. 2011) (discussing United States v. Gomez-Perez, 215 F.3d 315, 318 (2d Cir. 2000); United States v. Hernandez, 242 F.3d 110, 113-14 (2d Cir. 2001)). However, if courts "were to allow a claim of ineffective assistance of counsel at sentencing as a means of circumventing plain language in a waiver agreement, the waiver of appeal provision would be rendered meaningless."

<u>United States v. Djelevic</u>, 161 F.3d 104, 107 (2d Cir. 1998) (per curiam) (discussing defendant's "effort to dress up his claim as a violation of the Sixth Amendment" when "in reality challenging the correctness of his sentence under the Sentencing Guidelines").

Delutro's plea agreement contained a stipulation to the maximum statutory sentence. This Court, after determining that Delutro's guideline's range was above the maximum statutory sentence, imposed the sentence agreed upon in the plea agreement. Delutro's argument that his counsel was ineffective in misinforming him that his guideline range was above the statutory maximum appears to be a backdoor argument that this Court erred in imposing his sentence and such an argument is barred by the waiver provision of his plea agreement. <u>See</u> <u>Marte</u>, 798 F. Supp. 2d at 515.

### 3. *Evidentiary Hearing*

When ruling on a § 2255 petition "the district court is required to hold a hearing '[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" <u>Gonzalez</u>, 722 F.3d at 130-31 (citing 28 U.S.C. § 2255). However, a defendant is not entitled to an evidentiary hearing simply because he files a § 2255 petition. <u>Id.</u> ("To warrant a hearing, the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief.") A "district court may use methods under Section 2255 to expand the record without conducting a full-blown testimonial hearing," particularly when it concludes that taking testimony at a hearing "would add little or nothing" to detailed affidavits or other evidence already submitted. <u>Chang v. United States</u>, 250 F.3d 79, 86 (2d Cir. 2001). Because "'[s]olemn declarations in open court carry a strong presumption of verity'" the court must "take into account admissions made by the

defendant at his plea hearing" when determining if an evidentiary hearing is appropriate. Gonzalez, 722 F.3d at 130-31 (quoting Blackledge, 431 U.S. at 74).

As explained above, this Court dismisses Delutro's claims without holding an evidentiary hearing. Delutro's claims that he was coerced into pleading guilty are contradicted by his own testimony at his plea and sentencing hearings as well as by the detailed affidavits of his attorney. Peter Delutro's affidavit does not alter the calculus. Peter's affidavit makes clear that Peter was unaware of the circumstances that lead to the breakdown of the attorney-client relationship until discussions with his son that took place a year after he pleaded guilty. Therefore, much of the affidavit is simply a restatement of the allegations contained in his son's affidavit, allegations that Peter admittedly had no knowledge of independent of his post-plea discussions with his son. Those portions based on personal knowledge either contradict Delutro's claims or are contradicted by Delutro's in-court statements made under oath. After reviewing the affidavits and the record, this Court concludes that the testimony of Delutro, his father, and his lawyer "would add little or nothing to the written submissions." See Zamudio-Berges v. United States, 08-CIV.-8789, 2013 WL 2896978, at * 20 (S.D.N.Y. June 13, 2013) (Because the record contains evidence pertaining to petitioner's off-the-record interactions with trial counsel, "an evidentiary hearing 'would not offer any reasonable chance of altering ... the facts' and is therefore unnecessary." (quoting Chang, 250 F.3d at 86)).

B. Sufficiency of the Evidence

Finally, Delutro appears to claim that there was insufficient evidence to support his guilty plea. "A [petitioner] raising a sufficiency challenge [ ] bears a heavy burden because a reviewing court must consider the evidence 'in the light most favorable to the [Respondent]' and uphold the conviction if *'any* rational trier of fact could have found the essential elements of the

crime beyond a reasonable doubt.'" Donato v. United States, 06-CV-5287, 2014 WL 1814117, at *5 (E.D.N.Y. May 7, 2014) (alteration in original) (quoting United States v. Aguilar, 585 F.3d 652, 656 (2d Cir. 2009)). Delutro admitted that he conspired to rob an individual and that he knew the targeted individual was carrying a substantial amount of jewelry. The Government indicated that it had receipts demonstrating that the jewelry travelled in interstate commerce. (Plea Tr. at 26-27.) This testimony was sufficient for the Court to accept Delutro's guilty plea.

## CONCLUSION

For the foregoing reasons, Delutro's motions pursuant to 28 U.S.C. § 2255 are denied. Since Delutro has failed to make a "substantial showing of the denial of a constitutional right," a Certificate of Appealability shall not issue. 28 U.S.C. § 2253. The Clerk of Court is directed to enter judgment accordingly and to close this case.

SO ORDERED.

Dated: Brooklyn, New York
   September 16 , 2014

s/Carol Bagley Amon

Carol Bagley Amon
Chief United States District Judge

21